# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

GREGORY LANARD GUNN, SR.,

     Petitioner,

v.                                                                          Case No. 8:21-cv-336-CEH-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

Petitioner, a Florida prisoner, initiated this action by filing a petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response (Doc. 6), to which Petitioner replied (Doc. 10). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

A jury found Petitioner guilty of robbery and felony petit theft (Doc. 6-2, Exs. 7-8). He was sentenced to 15 years imprisonment on the robbery charge and to 5 years imprisonment on the felony petit theft charge, consecutive to the sentence for robbery (*Id.*, Ex. 12). The convictions and sentences were affirmed on appeal (*Id.*, Ex. 18).

Petitioner moved for post-conviction relief under Rule 3.850, Fla. R. Crim. P., alleging three claims of ineffective assistance of trial counsel (*Id.*, Ex. 27).[1] The state post-

_____

[1] Prior to filing his amended Rule 3.850 motion, Petitioner filed two Rule 3.850 motions (*id.*,

conviction court denied grounds two and three and directed the State to respond to ground one (*Id.*, Ex. 28). After the State responded (Doc. 6-3, Exs. 29 through 29-5), the post-conviction court denied ground one (*Id.*, Ex. 31). The denial of the amended Rule 3.850 motion was affirmed on appeal (*Id.*, Ex. 37). Petitioner filed another Rule 3.850 motion (*Id.*, Ex. 48). However, that motion was dismissed as untimely and successive (*Id.*, Ex. 49).

Petitioner filed his federal habeas petition (Doc. 1) which asserts three grounds for relief.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

---

Exs. 20, 23), both of which were dismissed without prejudice (*Id.*, Exs. 22, 24).

**A. Standard of Review Under the AEDPA**

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated

on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court

decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent

considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432

F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the

Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by [the United States
> Supreme Court] on a question of law or if the state court decides a case
> differently than [the United States Supreme Court] has on a set of materially
> indistinguishable facts. Under the 'unreasonable application' clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from [the United States Supreme Court's] decisions
> but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas

relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under

those rules and presumptions, "the cases in which habeas petitioners can properly prevail

on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*,

13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion and Procedural Default

The writ of habeas corpus cannot be granted unless the petitioner has exhausted all

available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v.

Sec'y, Fla. Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. § 2254(b),

(c)). Exhausting state remedies requires a petitioner to "fairly present" his claims in each

appropriate state court "thereby alerting that court to the federal nature of the claim."

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848

(1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)).

Under the procedural default doctrine, a claim raised in a federal habeas petition is

barred from review if the claim was not raised in state court and "the court to which the

petitioner would be required to present [the] claims in order to meet the exhaustion

5

requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735

n.1. To avoid a procedural default, a petitioner must show "either cause for and actual

prejudice from the default or fundamental miscarriage of justice from applying the

default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

## III. ANALYSIS

**Ground One:**    **Trial counsel were ineffective for failure to investigate exculpatory video evidence from Westshore Plaza Mall parking lot surveillance of Sears Dept. Store (Doc. 1 at docket pp. 5-7)**

Petitioner contends trial counsel were ineffective in failing to obtain video tape

from security cameras in the parking lot outside the Sears department store he and the

two Sears security employees, Mr. Hernandez and Ms. Kilpatrick, exited after Petitioner

stole merchandise from Sears. He alleges the video would show he committed no robbery

but only resisting a retail merchant, a lesser included offense of robbery.

A. Procedural default

Respondent argues Ground One is procedurally barred from review in this Court

because although he raised the claim in his amended Rule 3.850 motion in state court, he

failed to present the claim on appeal from the denial of the motion (Doc. 6 at 8, 10-11).

The Court agrees.

The state post-conviction court denied this ground, alleged in Petitioner's amended

Rule 3.850 motion, without an evidentiary hearing (Doc. 6-3, Ex. 31). Petitioner,

however, did not challenge the rejection of this ground in the appeal of the denial of his

amended Rule 3.850 motion (*Id.*, Ex. 34). Therefore, Respondent correctly argues this ground is procedurally barred from federal review.

Before a federal court can grant habeas relief, a petitioner must exhaust *every* available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan*, 526 U.S. 838 at 842; *see Henderson*, 353 at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).

Petitioner's failure to brief this claim in the appeal of the denial of his amended Rule 3.850 motion results in abandonment, thus rendering the ground unexhausted. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (stating that exhaustion of a claim raised in a Rule 3.850 motion includes an appeal from the denial of the motion).[2]

---

[2] *See Brooks v. Inch*, 2020 WL 6587239, at *12 (N.D. Fla. July 28, 2020), *report and recommendation adopted*, 2020 WL 6581976 (N.D. Fla. Nov. 9, 2020):

> In the past, the Eleventh Circuit interpreted Florida law differently. In two unpublished decisions issued in 2007, the Eleventh Circuit held that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to all claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief. *See Darity v. Sec'y, Dep't of Corr.,* 244 F. App'x. 982, 984 (11th Cir. 2007); *Cortes v. Gladish*, 216 F. App'x 897, 899–900 (11th Cir. 2007). However, the Florida case upon which the Eleventh Circuit relied in *Darity* and *Cortes*, that is, *Webb v. State*, 757 So. 2d 608

Petitioner cannot return to state court to file an untimely collateral appeal challenging the denial of this ground. Fla. R. Crim. P. 3.850(k). Consequently, Ground One is procedurally defaulted.

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith*, 256 F.3d at 1138. To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate not only that an error at the trial created the possibility of prejudice, but that the error worked to his "actual and substantial disadvantage" and infected the "entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 171 (1982). In other words, a petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent showing cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*,

---

(Fla. 5th DCA 2000), ceased to be the decisional law of the Fifth DCA in 2009. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009); *see also Maxwell v. State*, 169 So. 3d 1264, 1265 n.1 (Fla. 5th DCA 2015) (holding, in a post-conviction appeal where the lower court summarily denied relief without evidentiary hearing, that the defendant abandoned two of his three grounds by failing to raise them in his appellate brief) (citing *Ward*, 19 So. 3d at 1061).

477 U.S. 478, 495–96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, Petitioner must show constitutional error coupled with "new reliable evidence — whether ... exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner fails to allege cause for the default of his ground of ineffective assistance of counsel. He likewise fails to establish prejudice because he does not show that the alleged error infected the entire trial with constitutional error. *Frady*, 456 U.S. at 170. And Petitioner cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground One is procedurally barred from federal review.

B. Merits

Even if the claim was not procedurally barred, it would fail on the merits. In denying the claim, the state post-conviction court found defense counsel had requested all surveillance video capturing both the theft and robbery, and that Mr. Hernandez and Ms. Kilpatrick testified at trial that there were no cameras outside of the Sears department store (Doc. 6-3, Ex. 31 at docket pp. 34-36). Because defense counsel had requested video

that may have captured the robbery, and the testimony showed there was no video that would show the robbery, the state post-conviction court concluded Petitioner failed to demonstrate either deficient performance or prejudice (*Id.*, Ex. 31 at docket p. 36).

The state post-conviction court's factual findings are supported by the record. In her Motion to Compel Discovery, counsel moved the State to produce any surveillance video "which capture[d] the theft or robbery." (*Id.*, Ex. 31 at docket p. 48). The prosecutor informed the trial court that "the out-of-the-store acts are not on video[.]" (*Id.*, Ex. 31 at docket p. 55). And the security officers who confronted Petitioner during the offenses testified there were no cameras outside the store and no video of the events involving Petitioner outside the store (*Id.*, Ex. 31 at docket pp. 58, 60).

Petitioner has failed to rebut those factual findings with clear and convincing evidence. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."). His self-serving statements that there were surveillance cameras in the parking lot, and the security officers lied when they testified there were no cameras outside the store (Doc. 10 at p. 5), unsupported by any other evidence, are not clear and convincing evidence that there were cameras outside the store which captured the events that occurred after Petitioner exited

10

the store. *See, e.g., Baher v. Phillips*, 2009 WL 1457179, at *3 (S.D.N.Y. May 26, 2009)

(denying habeas relief because self-serving affidavit did not present clear and convincing

evidence to override state court's factual finding). In fact, Petitioner's contention that

there were cameras outside the store appears to be pure speculation, considering that in

July 2020, he moved the state court to compel Sears to inform him whether there were

cameras in the parking lot outside the store functioning on the day of the offense (Doc. 6-

3, Ex. 39).[3]

As the state court record conclusively establishes that defense counsel requested

any video showing the robbery, but there was no video because there was no camera

outside the store, the state post-conviction court's denial of Petitioner's Sixth Amendment

ineffective assistance of counsel claim was not contrary to *Strickland* or based on an

unreasonable determination of the facts. Moreover, as discussed above, the claim is

procedurally barred from review. Accordingly, Ground One warrants no relief.

**Ground Two:**   **Trial Counsel were ineffective for failing to object to Defendant being convicted of two charges that classify as double jeopardy (Doc. 1 at docket pp. 9-10)**

Petitioner contends trial counsel were ineffective in failing to raise a double

jeopardy objection. He argues his convictions for both felony petit theft and robbery

violate double jeopardy because 1) theft is a lesser included offense of robbery, and 2) the

---

[3] The state court treated the motion as a petition for the writ of mandamus and denied it, stating the court lacked authority to compel the respondents, who were private citizens, "to produce documents or release information." (Doc. 6-3, Ex. 40).

convictions were based on a single criminal episode involving only theft. He asserts the single criminal episode started when he took the items from Sears and went outside the store without paying for them and was completed when he retrieved the items he had dropped after he freed himself from Mr. Hernandez's choke hold.

This claim was raised in state court as Ground Two of Petitioner's amended Rule 3.850 motion (Doc. 6-2, Ex. 27 at docket pp. 770-72). In denying the claim, the state post-conviction court stated:

> In claim two, Defendant alleges ineffective assistance of counsel for failing to object to Defendant being convicted of two charges "that classify as double jeopardy." (*See* amended motion, p. 5, attached). Defendant alleges his convictions violate double jeopardy protections because theft is a lesser-included charge of robbery. He alleges the convictions violation [sic] double jeopardy protections because the action was one criminal episode. He alleges when he left the store, he was assaulted by Mr. Hernandez, broke free from Mr. Hernandez's choke hold, ran a couple of feet away, and turned around to retrieve the stolen merchandise. He again alleges he never reached a safe haven and never had a temporal break. Defendant contends he should have only been convicted of the crime of theft "since this series of events consisted of one criminal episode that started inside the Sears department store and was completed in the parking lot of the same Sears department store after Defendant was assaulted by a loss prevention officer." (*See* amended motion, pp. 9-10, attached). Defendant alleges if counsel had objected, he would not have been convicted of robbery and only convicted of theft, thereby receiving a less severe sentence.

> The Court finds claim two to be without merit. The State charged Defendant with two separate takings—the theft from Sears department store and the robbery of Mr. Hernandez. (*See* Supercedes Information; Trial Transcript, pp. 142-145, attached). Both Ms. Kirkpatrick [sic] and Mr. Hernandez testified at trial that Defendant left the store with the stolen items, dropped the bag with the stolen items in it after being confronted by Mr. Hernandez, left the immediate area, and then came back demanding Mr. Hernandez return the stolen items to Defendant. (*See* Trial Transcript,

12

pp. 157-161, 175, 185-195, attached).

Defense counsel did argue, however, that there were not two takings. The record reflects counsel moved for a judgment of acquittal conceding that a theft occurred when Defendant took the stolen items out of the Sears store but arguing that the remaining events only rose to the level of resisting a merchant—not a separate robbery. (*See* Trial Transcript, pp. 235-242, attached). The trial court denied counsel's motion. (*See* Trial Transcript, p. 242, attached). When counsel renewed her motion immediately prior to the closing arguments, she specifically referenced *Estremera v. State*, 89 So. 3d 291, [sic] (Fla. 5th DCA 2012), for the proposition that "robbery and theft can be double jeopardy charges." (*See* Trial Transcript, p. 253, attached).

In light of the basis for the charges filed against Defendant, the evidence presented at trial, and counsel's arguments in support of her motion for judgment of acquittal, the Court finds the records refutes Defendant's allegation that the outcome of the trial would have been different if counsel had objected to a double jeopardy violation. Specifically, the record reflects the charges filed were based on two separate takings, the witnesses testified about two separate events, counsel did argue there was only one taking, and counsel did raise the issue of double jeopardy. Thus, Defendant has not established deficient performance or prejudice. **Accordingly, relief is not warranted on claim two.**

(Doc. 6-2, Ex. 28 at docket pp. 784-86) (emphasis in original). The denial of the claim was

affirmed on appeal with no written opinion. (Doc. 6-3, Ex. 37).

The state post-conviction court determined counsel were not deficient because the

court found counsel raised double jeopardy. The record supports the court's finding.

During her second motion for judgment of acquittal, defense counsel referenced

*Estremera v. State*, 89 So. 3d 291 (Fla. 5th DCA 2012), for the proposition that "robbery

and theft can be double jeopardy charges." (Doc. 6-2, Ex. 6 at docket p. 281). Thus,

counsel cannot be found ineffective because a double jeopardy argument actually was

raised.

Even if counsel had failed to argue double jeopardy, Petitioner cannot demonstrate deficient performance or prejudice because there was no double jeopardy violation. The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 306–07 (1984). Here, Petitioner argues he was punished for both robbery and theft when he committed only theft. The Court disagrees.

Double jeopardy applies only where the defendant's conduct arises out of the same transaction. *See Blockburger v. United States*, 284 U.S. 299, 301 (1932). Separate transactions constitute distinct and separate acts that occur at different times. *Id*. Here, there were distinct and separate acts that occurred at different times. The theft was completed when Petitioner took the merchandise from Sears, put it in his bag without paying for it, and walked outside the store.[4] The robbery did not occur until Petitioner dropped the merchandise, ran away, returned 10 to 15 seconds later, and threatened Mr. Hernandez by telling him he had a gun and demanding he give him back the merchandise.[5] This act

---

[4] The elements of the crime of theft were: 1) Petitioner knowingly and unlawfully obtained or used the merchandise of Sears; and 2) Petitioner did so with intent to, either temporarily or permanently deprive Sears of their right to the property or any benefit from it. (Doc. 6-2, Ex. 6 at docket p. 319).

[5] The elements of the crime of robbery were: 1) Petitioner took the merchandise from the person or custody of Mr. Hernandez; 2) force, violence, assault, or putting in fear was used in the course of the taking; 3) the property taken was of some value; and 4) the taking was with the intent to

constituted a separate offense of robbery distinct from the theft that was committed when Petitioner took the merchandise from Sears. Therefore, Petitioner's double jeopardy rights were not violated. *See United States v. Rice*, 43 F.3d 601, 608 (11th Cir.1995) (the government does not subject a defendant to double jeopardy when it charges him with separate acts, even if one act facilitated the next or the acts were part of the same overall transaction).

Petitioner contends there was only one criminal episode during which he committed a theft but no robbery. He supports his contention by alleging that after he took the merchandise from Sears and went outside, he dropped the merchandise when Mr. Hernandez put him in a choke hold and did not run away but only broke free from the choke hold and separated himself momentarily from Mr. Hernandez before picking up the merchandise and fleeing. However, those allegations simply have no support in the record (Doc. 6-2, Ex. 6). And the state post-conviction court found that "the record reflects the charges filed were based on two separate takings" and "the witnesses testified about two separate events." Those findings are supported by the Amended Information (Doc. 6-2, Ex. 5), and Mr. Hernandez and Ms. Kilpatrick's testimony that Petitioner committed the theft when he took the merchandise from Sears and went outside the store and committed the robbery when he dropped the merchandise and fled for 10 to 15 seconds then returned and put them in fear when he told them he had a gun and

---

permanently or temporarily deprive Mr. Hernandez of his right to the property or any benefit from it. (Doc. 6-2, Ex. 6 at docket pp. 317-18).

15

demanded the merchandise (*Id.*, Ex. 6 at docket pp. 178-200; 215-28). Thus, Petitioner fails to provide clear and convincing evidence to dispute the state court's factual finding that there were two distinct criminal episodes.

Even if Petitioner was correct in that there was only one criminal episode, he still cannot show a double jeopardy violation. In evaluating a double jeopardy claim, *Blockburger* provides that:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304. "If each offense requires proof of a fact that the other does not, the *Blockburger* test is satisfied despite any overlap in the proof necessary to establish the crimes." *United States v. Moore*, 43 F.3d 568, 571 (11th Cir. 1994) (citing *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).

Petitioner was charged with robbery and felony petit theft (Doc. 6-2, Ex. 5). Each requires proof of an element that the other does not. Specifically, as to felony petit theft, the State must prove the defendant was convicted of theft on two previous occasions. *See* Fla. Stat. § 812.014(3)(c) ("A person who commits petit theft and who has previously been convicted two or more times of any theft commits a felony of the third degree, punishable as provided in s. 775.082 or s. 775.083.").[6] Robbery requires no proof of prior convictions for theft. *See* Fla. Stat. § 812.13(1). And robbery requires showing "force,

_____

6 The jury found Petitioner had previously been convicted two times of theft (Doc. 6-2, Ex. 8).

violence, assault, or putting in fear." *Id*. There is no such requirement to prove felony petit theft. *See generally* Fla. Stat. § 812.014. Accordingly, punishment for both offenses did not violate the principle against double jeopardy. *See McKinney v. State*, 66 So.3d 852, 856-57 (Fla. 2011) (double jeopardy does not prohibit dual convictions for robbery and theft).

Petitioner's counsel cannot be deemed ineffective because she raised double jeopardy and because there was no double jeopardy violation. Thus, Petitioner has failed to demonstrate the state courts' denial of this claim was contrary to or an unreasonable application of *Strickland*. Accordingly, Ground Two warrants no relief.

**Ground Three:** **Trial counsel were ineffective for failure to impeach both loss prevention officers on there [sic] prior inconsistent statements and conflicting trial testimony (Doc. 1 at docket pp. 11-13)**

Petitioner contends counsel were ineffective in failing to impeach Mr. Hernandez's credibility with a prior inconsistent statement and in failing to impeach Ms. Kilpatrick's credibility with her inconsistent trial testimony. Specifically, Petitioner asserts that after Mr. Hernandez testified that Petitioner dropped the merchandise and ran away before returning 10 to 15 seconds later, counsel should have impeached Mr. Hernandez with his prior written statement in which he stated Petitioner returned 40 to 50 seconds after running away. And he asserts counsel should have impeached Ms. Kilpatrick with the fact that she initially testified Mr. Hernandez had threatened to use force on Petitioner but subsequently testified Mr. Hernandez did not threaten Petitioner. Petitioner argues had counsel impeached the officers with the inconsistent statement and testimony, the jury

17

would have found the officers' version of the events less credible.

This claim was raised in state court as Ground Three of Petitioner's amended Rule 3.850 motion (Doc. 6-2, Ex. 27 at docket pp. 772-76). In denying the claim, the state post-conviction court stated:

> In claim three, Defendant alleges ineffective assistance of counsel for failing to impeach the loss prevention officers with prior inconsistent statements and conflicting trial testimony. Defendant alleges that on May 16, 2015, Mr. Hernandez wrote a sworn statement, with which counsel failed to impeach his inconsistent trial testimony. In particular, Defendant alleges that in his written statement, Mr. Hernandez asserted Defendant "had been gone for 40 to 50 second" before returning to the scene, but at trial Mr. Hernandez testified Defendant was gone approximately 10 to 15 seconds. Defendant alleges that he could not have run very far away from Mr. Hernandez if he was able to return in 15 seconds. He alleges he would not have been far enough away from Mr. Hernandez for Mr. Hernandez to lose visual sight of him, which supports Defendant's assertions that he only separated himself from Mr. Hernandez to stop the physical assault.

> Defendant also alleges that Ms. Kirkpatrick [sic] testified inconsistently at trial. He alleges she first testified that Mr. Hernandez threatened Defendant but later answered "no" when asked if Mr. Hernandez threatened Defendant. Defendants alleges, thus, Ms. Kilpatrick "answered the same question within seconds of each other and gave two opposite answers." (*See* amended motion, p. 13, attached). Defendant alleges if counsel had impeached both of the loss prevention officers it would have affected the officers' credibility. Defendant contends this would have raised substantial doubt and there is a strong probability the outcome of the proceedings would have been different.

> The Court finds claim three to be without merit. As to Mr. Hernandez, taking as true Defendant's allegations that Mr. Hernandez first indicated in his written statement that Defendant was gone for 40 to 50 seconds and then testified at trial Defendant was gone for approximately 10 to 15 seconds, the Court finds that impeaching Mr. Hernandez on this point would not have affected the outcome of the trial. Defendant alleges in his motion that Mr. Hernandez's testimony about a 10-to-15-second absence was beneficial for him—namely, Defendant alleges he couldn't have run far from

Mr. Hernandez and this information was "in line with the Defendant's allegation that the Defendant was only separating himself away from Mr. Hernandez because of the fact that Mr. Hernandez physically assaulted him to retrieve the merchandise." (*See* amended motion, p. 12, attached). The record reflects defense counsel argued during closing arguments that while a theft had occurred when Defendant took the merchandise from the Sears store, the State had not proved the elements of the robbery outside of the store and, instead, had only established the elements for resisting a retail merchant. (*See* Trial Transcript, pp. 270-284, attached). The Court finds that telling the jury Mr. Hernandez initially stated Defendant had been gone for a longer period of time would not have supported the defense's argument of resisting of retail merchant and, instead, would have supported the State's argument that Defendant dropped the merchandise, ran away, and then came back and re-took the merchandise from Mr. Hernandez. (*See* Trial Transcript, pp. 254-270, attached). Thus, as to Defendant's assertion that counsel failed to impeach Mr. Hernandez, the Court finds Defendant had not demonstrated deficient performance or prejudice.

As to Ms. Kirkpatrick [sic], the record reflects that she did at first respond affirmatively when asked if Mr. Hernandez threatened Defendant and then responded negatively to the same question. (*See* Trial Transcript, pp. 157-158, attached). However, it appears there was some confusion on the part of Ms. Kirkpatrick [sic] because in between those two answers, the following exchange took place,

Q: Did he ever threaten that he was going to hurt Mr. Gunn?
A: Leo?
Q: Your friend?
A: Oh.
Q: Your fellow loss prevention officer, specifically as to his acts.
A: Right.
Q: Okay? Not the defendant's acts[,] okay? Did he ever—did Leo ever threaten the defendant?
A: No.

(*See* Trial Transcript, pp. 157-158, attached). Additionally, the jury would have been aware of the two conflicting answers without the need of defense counsel pointing out that fact to them. The Court does not find counsel acted deficiently or that Defendant was prejudiced for counsel failing to question Ms. Kirkpatrick [sic] about these two conflicting answers when the record reflects there was some confusion on the part of Ms. Kirkpatrick [sic] as to

what she was being asked and the jury had heard both answers. **Accordingly, for all of the reasons above, the Court finds relief is not warranted on claim three.**

(Doc. 6-2, Ex. 28 at docket pp. 786-88) (emphasis in original). The denial of the claim was affirmed on appeal with no written opinion. (Doc. 6-3, Ex. 37).

Petitioner fails to show attempting to impeach Mr. Hernandez with his prior statement that Petitioner fled then returned 40 to 50 seconds later would have been favorable to his defense. Even assuming it would render Mr. Hernandez's testimony that Petitioner returned only 10 to 15 seconds after he fled less credible, the prior statement would inform the jury: 1) that Mr. Hernandez made a prior consistent statement that Petitioner fled; and 2) that it was 40 or 50 seconds before Petitioner returned. The prior statement is therefore prejudicial to Petitioner's alleged version of events that he never fled but only "distanced" himself from Mr. Hernandez to stop Mr. Hernandez from "physically assaulting" him while attempting to retrieve the stolen merchandise. Because the prior statement was prejudicial to Petitioner, outweighing any impeachment value, Petitioner cannot show counsel was deficient in failing to use the statement to impeach Mr. Hernandez. *Cf. Fugate*, 261 F.3d at 1219 ("We have found ineffective assistance where counsel failed to impeach the key prosecution witness with prior inconsistent testimony *where the earlier testimony was much more favorable to the defendant*.") (emphasis added).

Counsel likewise were not deficient in failing to impeach Ms. Kilpatrick with her

20

alleged inconsistent trial testimony. As the state post-conviction stated, it is apparent from the trial transcript that "there was some confusion on the part of Ms. Kirkpatrick [sic]" when she initially testified that Mr. Hernandez had threatened Petitioner. When the prosecutor asked Ms. Kilpatrick a second time whether Leo (Mr. Hernandez) ever threatened Petitioner and clarified that he was not asking about Petitioner's actions, Ms. Kilpatrick answered "no" (Doc. 6-2, Ex. 6 at docket pp. 157-58). Thus, Ms. Kilpatrick's testimony was not truly inconsistent. Rather, her second answer merely clarified that initially she incorrectly testified Mr. Hernandez had threatened Petitioner. Counsel cannot be ineffective in failing to impeach a witness with a prior statement that is not truly inconsistent with the witness's testimony. *See Morton v. State*, 689 So.2d 259, 264 (Fla.1997), *receded from on other grounds by Rodriguez v. State*, 753 So.2d 29 (Fla.2000) (a party may attack the credibility of a witness by introducing statements of the witness inconsistent with the witness's present testimony, the statement, however, "should be truly inconsistent, and caution should be exercised in permitting impeachment of a witness who has given favorable testimony but simply fails to recall every detail unless the witness appears to be fabricating."). And even if Ms. Kilpatrick's testimony was inconsistent, Petitioner cannot show prejudice because the jury was already aware of the inconsistent testimony since they heard both of Ms. Kilpatrick's answers. *See, e.g., Green v. State*, 975 So. 2d 1090, 1104 (Fla. 2008) ("No prejudice resulted from counsel's failure to present cumulative evidence of inconsistent statements.").

The state courts' adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state courts' adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Accordingly, Ground Three warrants no relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk** is directed to enter judgment against Petitioner and close this case.

3. The Court may grant an application for a Certificate of Appealability (COA) only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And because Petitioner is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida on February 26, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*
            Counsel of Record

22